IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV472-MU-02

| | |
|---|---|
| KELVIN J. BETHEA,           )<br>    Plaintiff,           )<br>                    )<br>    v.                    )<br>                    )<br>KRISTIE C. BENNETT, Man- )<br>  ager of Moore Unit at   )<br>  the Lanesboro Correc-   )<br>  tional Institution;     )<br>(FNU) REEVES, Sergeant on)<br>  the Richmond Unit at    )<br>  the Lanesboro Correc-   )<br>  tional Institution;     )<br>D. PRESTON, Corrections  )<br>  Officer at the Lanes-   )<br>  boro Correctional In-   )<br>  stitution; and          )<br>(FNU) WALLACE, Correc-   )<br>  tions Officer at the    )<br>  Lanesboro Correctional  )<br>  Institution,            )<br>    Defendants.           )<br>_____) | ORDER |

**THIS MATTER** comes before the Court on an initial review of the plaintiff's civil rights Complaint under 42 U.S.C. §1983, filed November 16, 2006. After careful consideration, for the reasons stated herein, the plaintiff's Complaint will be <u>dismissed</u>, ultimately, for his failure to state a constitutional claim for relief.

According to the Complaint, at all times relevant to this

action, the plaintiff was an inmate in the custody and control of the North Carolina Department of Corrections. The plaintiff alleges that the defendants are liable to him because their "negligence," contributory negligence," "unprofessional behavior" and "misconduct" allowed or caused him to be violently assaulted by his fellow inmates on an occasion.

More particularly, the plaintiff alleges that on April 11, 2006, he was in his cell when three inmates--whom he was unable to identify--entered his cell and assaulted him. During the assault, the plaintiff alleges that he called out for help and pressed the "emergency call button" four or five times. Although defendant Preston, who was working in the control booth at the time, responded to the call button by automatically opening the plaintiff's cell door, the plaintiff was unable to leave his cell because one of his attackers closed the door each time it was opened.

The plaintiff further alleges that the attack lasted for about 10 minutes, during which he believes he lost consciousness. After waking up, the plaintiff again pressed the call button and was able to leave his cell. The plaintiff then went in search of correctional officers, but was unable to find any on his Unit. The plaintiff then went to another unit, where he encountered officers who escorted him to the medical unit for treatment. Following his treatment, the plaintiff was placed in administra-

tive segregation while corrections personnel could conduct an investigation. Such investigation included the plaintiff's viewing of the identification photos of all of the inmates assigned to Moore Unite where he previously was housed. The plaintiff reports that when authorities eventually tried to return him to his regular unit, he refused to leave segregation since their investigation had failed to locate his attackers.

Concerning his injuries, the plaintiff alleges that he was told that he had suffered a concussion. In response, the plaintiff was treated with pain medications, special tinted eye glasses. However, the plaintiff alleges that he continues to suffer head and neck pain, and blurred vision from the attack.

Based upon the foregoing, the plaintiff alleges that defendant Bennet is liable to him under a theory of "supervisory negligence" for her "complete act of negligence" in failing to "ensure that there was the necessary officers on Moore Unit at all times." The plaintiff alleges that defendant Reeves also is liable to him under a theory of "supervisory liability" for "negligen[tly]" having assigned two officers--who otherwise would have been on his unit and in the position to prevent or stop the attack--to work in the dining hall on the occasion of his attack.

Interestingly, the plaintiff also alleges that defendant Wallace is liable to him for her "gross[] negligen[ce], contributory negligen[ce], and criminal negligen[ce]," because she is the

person who actually arranged for his assault by "gang members that she was involved with." Not too surprisingly, the plaintiff does not set forth a single fact to support that allegation. Instead, the plaintiff states that he found out after his attack that defendant Wallace was forced to resign because she had "used her position [to] ask an [sic] correctional officer to supply the inmates with drugs and also have sexual relationships with gang members at [the Institution]."

As for defendant Preston, the plaintiff alleges that he is liable to him for negligence because he unwittingly allowed the inmates into his Unit without having been given clearance to do so by any officer who had checked their POD I.D. cards. By way of damages, the plaintiff seeks millions of dollars from each defendant, in compensatory and/or punitive damages. In the alternative, the plaintiff reports that he will settle for the resignations of defendants Bennett, Reeves and Preston, criminal charges being lodged against defendant Wallace, and a total of $250,000 in damages.

Notwithstanding his obvious sincerity, it is abundantly clear to the Court that the plaintiff cannot proceed with his allegations. To be sure, at the outset of this analysis, the undersigned notes that the law is clear that mere conclusory allegations are woefully insufficient to state a constitutional claim for relief. Indeed, an action may dismissed as "frivolous"

if it lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); accord Denton v. Hernandez, 504 U.S. 25, 32 (1992).

To put it another way, "the statute [28 U.S.C. §1915] accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 324-27. Moreover, in determining whether a complaint is factually frivolous, a district court is not required to "accept without question the truth of plaintiff's allegations," but rather is expected to apply common sense, reject the fantastic, and take into account judicially noticeable facts. Denton, 504 U.S. 32-33. Finally, to survive a review for factual frivolousness, a plaintiff proceeding in forma pauperis, such as Mr. Bethea, cannot rely merely on "conclusory allegations." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

With the foregoing precedent as the foundation, the Court finds that the plaintiff's allegations against all of the defenant's, but particularly defendant Wallace, are far too conclusory to state a constitutional claim for relief. Therefore, they cannot survive this initial review. Equally critically, it has not escaped the Court's attention that the essence of the

plaintiff's allegations sounds in negligence.  However, it is well settled law that allegations of mere negligence are not enough to give rise to a cause of action under §1983.  See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); and Miltier v. Beor, 896 F.2d 848 (4th Cir. 1990) (noting that mere negligence does not violate the Eighth Amendment).  Thus, even if this Court were to construe the plaintiff's allegations as sufficient to state a claim for mere negligence--since they cannot possibly be construed as stating claims for gross negligence--he cannot state a claim for relief on this record.

Furthermore, to the extent that the subject claims can be construed as alleging that the defendants somehow were deliberately indifferent to his need for safety, the plaintiff still cannot withstand this review.  To establish deliberate indifference, a plaintiff must allege facts which tend to show that the defendant knew of, and disregarded an objectively serious risk of harm.  Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Here, other than his conclusory statement that defendant Wallace actually arranged his assault, there absolutely are no allegations which could support any findings that any of the defendants both knew of and disregarded a risk that the plaintiff was going to be assaulted.

Finally, it goes without saying that the undersigned does not have the authority to direct the North Carolina Department of

6

Corrections to terminate any of its employees even when the plaintiff prevails in a civil rights action under §1983. Consequently, inasmuch as the plaintiff has failed to state a claim for relief, he clearly cannot obtain any relief on his request that the defendants be terminated from their employment. This entire Complaint, therefore, will be dismissed.

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's Complaint is **DISMISSED** for its failure to state a constitutional claim for relief. See 28 U.S.C. 1915(A)(b)(1).

**SO ORDERED.**

Signed: November 20, 2006

Graham C. Mullen
United States District Judge